1 | Mark F. Anderson (SBN 44787)
Kemnitzer, Anderson, Barron & Ogilvie LLP
2 | 445 Bush Street, 6th Floor
San Francisco, CA 94108
3 | Ph: (415) 861-2265
Fax: (415) 861-3151
4 | mark@kabolaw.com

5 | Attorneys for Steven R. Yourke

6

7

8 | UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9

10 | **STEVEN R. YOURKE,**                     ) Case No. C 06 02370 CW
                                                )
11 |            Plaintiff,                       ) **DECLARATION OF EVAN
                                                ) HENDRICKS IN OPPOSITION TO**
12 |     v.                                      ) **DEFENDANT
                                                ) EXPERIAN'S MOTION TO**
13 | **EXPERIAN INFORMATION SOLUTIONS,**         ) **EXCLUDE TESTIMONY OF EVAN
INC.;**                                         ) **HENDRICKS**
14 |                                             )
                                                ) **Date: May 10, 2007**
15 |            Defendant.                       ) **Time: 2:00 PM**
                                                ) **Location: Courtroom 2, 4th Floor**
16 | _____  )

17 | I, Evan Hendricks, declares:

18 |     1.   I am the plaintiff's disclosed expert.  A true and correct copy of my current resume is

19 | attached as Exhibit "A" to this declaration.

20 |     2.   I have been admitted as an expert witness on Fair Credit Reporting Act issues in a

21 | number of litigated cases, including the following actions: <u>Sloane v Equifax Information</u>

22 | <u>Services LLC</u>, Case No. CIV 1:05 1272 (E.D. Va.) (Judge Leonie Brinkeman gave me wide

23 | leeway to testify over objection); <u>Cortez v Trans Union</u>, LLC, Civil 2:015 05684-JF (E.D. Pa) (in

24 | which Judge Fullum qualified me after a *Daubert* hearing); <u>Kirkpatrick v Equifax Information</u>

25 | <u>Services, L.L.C.</u> Case No. 02-1197 (D. Oregon) 2005[1]; <u>Coleman v.  Trans Union, LLC</u>, U.S.

26 |

27 |

28 |     [1] In this case, Judge Mosman made the following comments: "The second question is

Decl of Evan Hendricks in Opp to Motion to Exclude, *Yourke v Experian*                                    1

Dist.  Ct.  Case No.  98-CV-169B-B (D.Miss.); <u>Spengler v.  Sears Roebuck & Co.</u>, Wicomico

County Circuit Court, Maryland, No.  C-03-0557; <u>Campbell v.  G.E.  Capital Auto Lease</u>, St.

Mary's County Circuit Court, Maryland, Case No.  99-522 (in which the Court stated, "The

Court cannot agree with defendant that Mr. Hendricks is not an expert qualified to testify as to

the FCRA and issues involving alleged invasion of privacy."  Two months ago, in <u>FTC v</u>

<u>Accusearch, Inc.</u>, Civil No 06-CV-105-D (D. Wyoming), Magistrate Judge William C Beaman

rejected the defendants' *Daubert* challenge to my testimony in a phone records privacy case

(copy of order attached as Exhibit "C.") Additional cases in which I have testified are listed on

page 4 of my resume, Exhibit "A."

      3.      I have testified on privacy and Fair Credit Reporting Act matters before the U.S.

Senate and U.S. House of Representatives as indicated on page two of my resume.

In 2003, I was one of only six witnesses invited by the Senate Banking Committee to testify in a

hearing which resulted in sweeping amendments to the Fair Credit Reporting Act.  Senator

Sarbanes welcomed me stating, "Mr. Hendricks was the Founder the *Privacy Times* newsletter,

has been its Editor for 23 years, and has testified before Congress a number of times on Fair

Credit Reporting Act issues.  His expertise has been helpful in the past, and I am sure will

---

Mr. Hendricks in the abstract or in general qualified as an expert in this general area.  And I believe that he is.  There are things that he has reviewed that aren't readily available to the jury.  There's a context of congressional action, industry issues and identity theft as a nationwide problem that would be helpful to the jury to hear from someone who has studied these issues.  The sources of his study are sufficient to qualify him as an expert both with regard to what he has read, and that includes not only his own paper that he puts out, but the deposition testimony is a sufficiently precise and unavailable source of expertise that it would be helpful to the jury to hear from someone who has assimilated that sort of information.

    The more precise question, and really the question raised by the defense is his testimony in this case supported by any of that sort of research and expertise on particular issues that are raised.  And my answer to that is that on most of them, I believe that his testimony is   sufficiently supported by his own expertise; that is, that what he offers to this jury on the issues presented in this case is sufficiently supported by his general expertise to satisfy Rule 702.  As a general statement, what I'm allowing and the reason I'm allowing it is testimony that puts the particular actions of the defendant in particular here in context, in the context of the nationwide problem of identity theft, in the context of the congressional reaction to that and other issues in the credit-reporting industry, when he can by virtue of his study and his prior testimony, both in court and to Congress, make comparisons, then that's something that's helpful to the jury." Excerpt of Proceeding before Hon. Michael W. Mosman, U.S. District Judge, 1/18/05 (true copy of transcript attached as Exhibit "B."

1    continue to be helpful as the Committee examines the functioning of the credit reporting system

2    and the ways in which consumers' credit reports are affected."

3          4.      Similarly, I was closely involved with the six years of Congressional hearings and

4    legislative debate that resulted in the 1996 amendments to the FCRA. I followed more closely

5    than all but a handful of people the advent and rise of identity theft, observing first-hand the

6    description of victims, and reading, analyzing and publishing articles on major studies and

7    testimonies on the topic by the FTC, U.S.General Accounting, U.S. Secret Service, U.S.Social

8

9    Security Administration and the Identity Theft Resource Center.

10         5.      As editor and publisher of *Privacy Times*, a professional reporting service

11   specializing in information law and policy, I have extensively researched and reported on credit

12   reporting issues throughout the late 1980s and early 1990s, when inaccurate credit reports

13   became the leading cause of complaints to the FTC, and when the FTC and state attorneys

14   general reached consent agreements with defendant. I have interviewed first-hand both FTC and

15   state officials who were involved in the investigations of the credit reporting agencies (including

16

17   defendant Experian's predecessor TRW).

18         6.      This case turns on complex issues of credit reporting and the obligation of credit

19   bureaus to correct inaccurate or misleading credit reports, subjects that are not easily or widely

20   understood by the general public. I believe my testimony is highly reliable and directly relevant

21   to helping the jury understand the issues in this case. It is based upon years of research and

22

23   investigation, and upon review of materials not available to the general public.

24         7.      Members of the credit reporting industry, including defendant Experian, have

25   recognized me as a privacy expert.  In 1990, Equifax, Inc., published "The Equifax Report on

26   Consumers in the Information Age".  In the report, I was listed as one of the eight "Experts On

27   Privacy" the authors acknowledged "with appreciation for the advice as to survey coverage and

28

topics that was provided during the formative stages of the survey work . . ."

8.    In 2002, defendant Experian invited me to join its Consumer Advisory

Council, which met twice a year (Spring and Fall). Experian paid me a $700 honorarium for each

meeting. Experian disbanded the council in 2004.

9.    In 2004, I earned a "FCRA Certification" from the National Credit Reporting

Association (NCRA).

10.    In my capacity as an expert witness in literally dozens of FCRA cases, I have read

and reviewed thousands of pages of depositions and records to which the public does not have

access.  Experian and other CRAs have zealously sought to restrict dissemination of these

materials through protective orders such as the one entered in this case. It is only by virtue of my

role as an expert that I have been allowed the opportunity to read thousands of pages of

deposition testimony by consumer reporting agency officials and by credit grantor personnel

responsible for reporting data to credit bureaus.

11.    Most recently, I wrote and had published a book on the subjects of identity theft,

credit reporting and credit scoring, <u>Credit Scores and Credit Reports: How The System Really</u>

<u>Works, What You Can Do</u> (2nd Edition, Privacy Times 2005).  It is available in major bookstores

and on Amazon.com.

12. Regarding damages typically suffered by consumers in plaintiff Yourke's situation, my

opinion that the kinds of distress, frustration and aggravation damages that Yourke suffered were

consistent with those suffered by other victims of chronic credit report inaccuracy. My opinion is

based in this regard is based in part upon findings by the FTC's Operation Busy Signal

investigation and upon a series of studies from 1991 to 2004, including a 1991 PIRG study,

"Don't Call; Don't Write; We Don't Care," which found that the average duration of complaints

against a credit bureau was almost 6 months.  Separate studies by the FTC and by the Identity

1 | Theft Resource Center similarly found that credit bureaus typically took months to resolve

2 | consumers' disputes over credit report errors.

3 |     I declare under penalty of perjury under the laws of the State of California that the

4 | foregoing is true and correct.

5 | Dated: April 6, 2007.

6 |

7 |                         Evan D. Hendricks

Exhibit A to Hendricks Declaration

# Evan D. Hendricks
## CURRICULUM VITAE

**Professional Activities**

1981- Present      **Editor/Publisher** of ***Privacy Times***

Since 1981, I have been Editor/Publisher of *Privacy Times*, a biweekly, Washington-based newsletter that reports on privacy and information law, including the Fair Credit Reporting Act (FCRA). The newsletter ranges from 8-12 pages, 23 issues per year. Thus, I have researched, written, edited and published many articles on Congressional and State legislative actions, judicial opinions, industry trends and actions, executive branch policies and consumer news as they related to the FCRA.

**1992 – Present      Expert Witness**

Qualified by the federal courts in FCRA and identity theft cases. (Complete list attached). I have read extensive deposition testimony by credit bureau and credit grantor personnel. This is significant because CRAs and credit grantors do not openly discuss or publish information on their procedures and practices for handling personal data, and the best (and possibly only) sources for finding candid descriptions of CRAs' and credit grantors' procedures and practices in relation to credit reporting data are the depositions of CRA and credit grantor employees in FCRA litigation.

**1998 – Present      Privacy Expert Consultant, U.S. Social Security Administration**

Regularly review policies and practices in relation to the collection, use and disclosure of personal data and Social Security numbers and provide feedback and recommendations.

**2002 – 2004      Member, Experian Consumer Advisory Council**

Along with other Council members, I provide an outsider's view on credit reporting, marketing and other privacy issues.

**July – October 2002      Consultant to U.S. Postal Service**

Working with the USPS's Chief Privacy Officer, I assisted in reviewing and editing the re-write of the USPS's Privacy Act notices, with an emphasis on "Plain English."

---

Evan Hendricks      P.O. Box 302      Cabin John, MD 20818
**(301) 229 7002  (301) 229 8011 [fax] evan@privacytimes.com**

**Recent Testimony Before Congress & The FTC**

"Privacy in the Commercial World II," House Energy & Commerce Subcommittee On Commerce, Trade, and Consumer Protection, June 20, 2006[1]

"Financial Data Protection Act of 2005," House Financial Services Subcommittee on Financial Institutions and Consumer Credit, November 9, 2005[2]

"Credit Card Data Processing: How Secure Is It?" House Financial Services Subcommittee on Oversight and Investigations, July 21, 2005[3]

"Identity Theft: Recent Developments Involving the Security of Sensitive Consumer Information,"[4] Senate Banking Committee, March 15, 2005

"The Accuracy of Credit Report Information and the Fair Credit Reporting Act;" Senate Banking Committee, July 10, 2003[5]

"The Role of FCRA in the Credit Granting Process," House Financial Services Subcommittee on Financial Institutions & Consumer Credit, June 12, 2003[6]

"Database Security: Finding Out When Your Information Has Been Compromised," Senate Judiciary Subcommittee on Technology, Terrorism and Government Information, Nov. 4, 2003[7]

"Fighting Fraud: Improving Information Security," House Financial Services Subcommittee on Financial Institutions & Consumer Credit, and Oversight, April 3, 2003[8]

"Information Flows: The Costs and Benefits to Consumers and Businesses of The Collection and Use of Consumer Information," Federal Trade Commission, National Workshop, June 18, 2003

**Books**

Credit Scores and Credit Reports: How The System Really Works, What You Can Do [2nd Edition] (Privacy Times, 2005)

Your Right To Privacy: A Basic Guide To Legal Rights In An Information Society (2nd Edition, Southern Illinois University Press, 1990), (Includes a chapter on credit reporting)

Former Secrets: Government Records Made Public Through The Freedom of Information Act (Campaign For Political Rights, 1982)

---

[1] http://energycommerce.house.gov/108/Hearings/06202006hearing1938/Hendricks.pdf
[2] http://financialservices.house.gov/hearings.asp?formmode=detail&hearing=425
[3] http://financialservices.house.gov/hearings.asp?formmode=detail&hearing=407
[4] http://banking.senate.gov/index.cfm?Fuseaction=Hearings.Detail&HearingID=144
[5] http://banking.senate.gov/03_07hrg/071003/index.htm
[6] http://financialservices.house.gov/hearings.asp?formmode=detail&hearing=229
[7] http://judiciary.senate.gov/testimony.cfm?id=983&wit_id=2790
[8] http://financialservices.house.gov/hearings.asp?formmode=detail&hearing=202

**International Lectures**

24th International Conference of Data Protection & Privacy Commissioners (Cardiff, Wales –
Presentation published in conference proceedings, 2002)
The 23rd International Conference of Data Protection Commissioners (Paris, La Sorbonne –
Presentation published in conference proceedings, 2001)
The 22nd Annual Conference on Data Protection (Venice, Italy -- 2000)
The 16th Annual Conference on Data Protection (The Hague, The Netherlands -- 1994).

In the 1980s, served as an expert consultant to both the Privacy Commissioner of Canada and
Privacy Commissioner of Australia.

**Presentations/Instruction At Recent CLE & Professional Seminars**

"11th Annual Consumer Financial Services Litigation," Practicing Law Institute, March 20-21,
2006 (New York City)
"Bankruptcy Roundtable," and, "Fair Credit Reporting Act Roundtable," National Consumer
Law Center, October 27, 2005
"Advanced Consumer Litigation," Texas Bar CLE, Feb. 10-11, 2005
"Financial Privacy Litigation," (Impact of FACT Act), Practicing Law Institute,
February 28- March 1, 2005 (New York City)
"The New FACT Act: Challenge & Opportunity," Privacy & American Business, Feb. 9-10, 2004
"Understanding the FACT Act And The Impact of Multi-Agency Rulewriting Process,"
Glasser LegalWorks, Sept. 28-29. 2004
"12th Annual National Conference," National Credit Reporting Association, Nov. 10-12, 2004

**Professional Societies**
Past President and Board Member, American Society of Access Professionals
www.accesspro.org

**Industry Certification**
FCRA Certification, National Credit Reporting Association (www.ncrainc.org).

**Media**
In addition to being a paid consultant and special guest on CNN's IMPACT news in 1996,
I am quoted regularly by major and small newspapers (including The Washington Post, New
York Times, Wall Street Journal, Chicago Tribune, Los Angeles Times, Newsweek and Money
Magazine), regarding issues of privacy generally and the privacy implications of consumer
reporting specifically. I have appeared on National Public Radio, PBS NewsHour with Jim
Lehrer, ABC Nightline and World News Tonight, NBC Nightly News, CBS Evening News,
CNN News Watch, CNBC, MSNBC, Fox News, various local affiliates, and the Oprah Winfrey
Show and Geraldo, regarding these issues as well.

**Education**

Bachelor of Arts, Columbia College, Columbia University, New York, N.Y. (1979)

## II. TESTIMONY AND EXPERT REPORTS

Within recent years, I have testified at trial, or been deposed as an expert, in the following cases:

Andrews v. Trans Union Corp. et al., Case No. 96-7369, (USDC-C.D. Calif.), concerning theft-of-identity and consumer report inaccuracies. Expert report, deposition, trial testimony. Judge Lourdes Baird presiding. The U.S. Court of Appeals for the Ninth Circuit specifically found that my opinion on the prevalence of identity theft was relevant to the reasonableness of CRA procedures. (see 225 F.3d 1063 (2000)).

Suzanne Sloane vs. Equifax Information Services, LLC, et al., U.S. District Court for the Eastern District of Virginia (Alexandria Div.), Case No. CIV 1:05 cv 1272. Expert reports. Deposition. Trial Testimony  Judge Leonie M. Brinkema presiding.

Matthew Kirkpatrick. v. Equifax Credit Information Services, et al.: U.S. District Court for the District of Oregon; No. CV 02-1197-MO. FCRA, identity theft. Expert report. Deposition. Trial Testimony. Judge Michael W. Mosman presiding.

Sandra Cortez vs. Trans Union, LLC., U.S. District Court for the Eastern District of Pennsylvania: No. 2:05 –cv—05684-JF. FCRA. Expert Report. Daubert Hearing. Senior Judge John P. Fullum qualified me to testify at trial.

Federal Trade Commission vs. Accusearch, Inc., et al., U.S. District Court for the District of Wyoming, Case No. 06CV0105-D. FTC Section 5. Expert Report. U.S. Magistrate Judge William C. Beaman rejected Defendant's motion to exclude my testimony.

Eddie Silva, et al. v. Haynes Furniture Co., Inc.: U.S. District Court for the Eastern District of Virginia: No. 4:04CV82. FCRA. Fairness hearing testimony. Judge Walter D. Kelley, Jr. presiding.

Joi Helmes v. Wachovia Bank N.A.: U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria), Case No: 01-81277-RGM, Chapter 7. Post-bankruptcy credit reporting. Expert report. Deposition. Trial Testimony. Judge Robert G. Mayer presiding.

Alex Campos and Michael York v. ChoicePoint Services, Inc.: U.S. District Court for the District of Georgia (Atlanta), Civ. Action No. 1-03-CV-3577-WSD. FCRA. Expert Declaration. Fairness hearing testimony. Judge William S. Duffey, Jr. presiding.

Denis W. Stasulis v. Suntrust: U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria), Case No: 04-12542-RGM, Chapter 7. Post-bankruptcy credit reporting. Expert report. Deposition. Trial Testimony. Judge Robert G. Mayer presiding.

Dwaine Perry, et al. v. FleetBoston Financial Corp.: U.S. District Court for the Eastern District of Pennsylvania: No. 04-507. FCRA. Expert Report. Fairness hearing testimony. Judge Berle M. Schiller presiding.

Tammy Cochran v. C&M Motors, LLC, dba I-10 Toyota, et al: U.S. District Court for the Central District of California, No. CV-03-3568FMC. FCRA. Expert Report. Trial Testimony Judge Florence-Marie Cooper presiding.

Myra Coleman v. Trans Union LLC, CA4: 98-CV-169B-B (USDC-Mississippi) FCRA. Expert report, deposition, trial testimony. Judge Neal B. Biggers presiding.

Arthur Spengler v. Sears Roebuck & Co., Case No. C-03-0557. (Circuit Court, Wicomico County, Maryland). Tort, Interference with Business Relationships. Trial Testimony. Judge D. Davis qualified me as expert on credit scoring, credit reporting and FCRA-related issues.

Judy C. Thomas v. Trans Union LLC, U.S. District Court for the District of Oregon; Case No. 00-1150-JE. FCRA. Expert report, deposition, trial testimony. Magistrate Judge John Jelderks presiding.

Scott E. Campbell v. G.E. Capital Auto Lease, Circuit Court For St. Mary's County, Maryland, Case No. 99-522. FCRA, invasion of privacy. Expert report, deposition. Judge Karen Abrams qualified me to testify, but the case settled one week before trial.

Franklin F. Grizzard, Jr.  v. Trans Union, L.L.C., & Equifax Information Services L.L.C., et al.: U.S. District Court for the District of Virginia (Richmond Div.); Nos. 04-CV-625 & 04-CV-626, respectively. Expert report. Affidavit. Deposition.  On the eve of trial, Judge Richard Williams rejected Defendant's motion to disqualify me.  The case settled shortly thereafter.

Catherine Smith, et al. v. Progressive Corporation, et al.: U.S. District Court for the Middle District of Florida (Gainesville), Case No.1:00-CV-210-MMP. Expert Report, Declaration of Value, Fairness Hearing testimony.  Judge Maurice M. Paul presiding.

Franklin E. Clark, et al. v. Experian, et al.: U.S. District Court for the District of South Carolina, Case Nos. 8:00-1217-22, 8:00-1218-22, 8:00-1219-22. Affidavit, Supplemental Affidavit (both affidavits were admitted into evidence without objection). Judge Cameron McGowan Currie presiding.

In Re: Farmers Insurance Co., Inc., FCRA Litigation, U.S. District Court for the Western District of Oklahoma, Case No. CIV 03-158-F. FCRA. Expert report, deposition.

Steven E. Beck v. Equifax Information Services, et al.: U.S. District Court for the Eastern District of Virginia: No. 1-05cv347. FCRA.  Expert report, deposition.

Larry Alabran v. Capital One Services, Inc.,: U.S. District Court for the Eastern District of Virginia (Richmond Division); Case No. 3:04-CV-935. Expert report, deposition.

Gail Cope v. MBNA American Bank NA: U.S. District Court for the District of Oregon; No. 04-CV-493-JE. Expert report, deposition.

Robert Gordon Peoples v. Experian Services Corp., et al.: U.S. District Court for the Central District of California: No. CV-04-1378 CAS (Ex). Expert report. Deposition.

Lottie Robertson v. Experian Information Services, Inc. & Capital One Bank: U.S. District Court for the Eastern District of Michigan (Southern Div.) No. 04-72308. Expert report. Deposition.

Barbara A. Harris v. Experian Information Solutions, Inc., and Equifax Credit Information Services, Inc: U.S. District Court for the District of Oregon, Civil No. 01-1728-JE. FCRA. Expert reports. Deposition

Bruce Danielson v. Experian Information Solutions: U.S. District Court for the Northern District of Texas, Case No: 3-04CV-1722N. FCRA. Expert report. Deposition.

Stacy Lawton Guin, et al. v. Brazos Higher Education Service Corporation, Inc.: USDC-Minnesota – No. CV 05-668 RHK/JSM. Negligence. Security Breach. Affidavit. Deposition.

Anthony Chin v. State Dept. Federal Credit Union: Circ. Ct. Prince George's County (Maryland); Civ. Act. No. CAL04-12778; Tort. Deposition. Trial testimony.

James M. McKeown v. Sears Roebuck & Co., et al: U.S. District Court for the Western District of Wisconsin, Civil No. Case No. 03-CV-0528 C. Expert Report, deposition.

Paulette Field v. Trans Union LLC, et al., Case No. 01 C 6390 (USDC-N.D. Illinois - Eastern Div. FCRA. Expert report. Deposition.

Earle E. Ausherman, et al. v. Bank of America Corporation et al.: U.S. District Court for the District of Maryland, Civil Action No. MJG-01-438. FCRA. Expert report. Deposition

Jesse Klco v. Elmhurst Dodge, U.S. District Court for the Northern District of Illinois (Eastern Division) Civil Action No. 01 C 0433. FCRA. Expert report, deposition.

(David & Ruthie Keefner v. Webb Ford, Inc. & Deon L. Willis.: U.S. District Court for the Northern District of Illinois (Eastern Division), Civil Action No. 02C-4643. FCRA. Expert report. Deposition.

Anthony & Alethea Preston v. MGIC, U.S. District Court for the Middle District of Florida (Ocala), Case No. 5:03-cv-111-Oc-10GRJ. FCRA. Expert report, deposition.

Bruce Butcher and Pam Butcher v. Chase Manhattan Bank, U.S.A., Inc., U.S. District Court for District of South Carolina, Case No. 8:03-3184-26. FCRA. Expert report, deposition.

### III. FEE

My fee is $250 per hour for preparation and for consulting; $250 per hour, or a minimum of $1,000 per day, for deposition or trial testimony, plus reasonable travel time, plus travel costs and expenses.

Exhibit B to Hendricks Declaration

Judge Mosman Hearing on Hendricks.txt

1

1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3   MATTHEW KIRKPATRICK,            )
                                    )
4           Plaintiff,              )   Case No. CV-02-1197-MO
                                    )
5       vs.                         )
                                    )
6   EQUIFAX INFORMATION SERVICES,   )   January 18, 2005
    LLC, a foreign corporation,     )
7                                   )   Portland, Oregon
            Defendant.              )
8   _____ )

9

10

11                  TRIAL DAY ONE

12             EXCERPT OF PROCEEDINGS

13       BEFORE THE HONORABLE MICHAEL W. MOSMAN

14        UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25

2

1

2                   APPEARANCES

Judge Mosman Hearing on Hendricks.txt

```
 3   FOR THE PLAINTIFF:      Mr. Michael C. Baxter
                             Mr. Justin M. Baxter
 4                           Baxter & Baxter, LLP
                             8835 S.W. Canyon Lane, Suite 130
 5                           Portland, OR 97225

 6                           Mr. Robert S Sola
                             Attorney at Law
 7                           8835 S.W. Canyon Lane, Suite 130
                             Portland, OR 97225
 8

 9   FOR THE DEFENDANT:      Ms. Mara McRae
                             Ms. Cindy D. Hanson
10                           Mr. J. Anthony Love
                             Kilpatrick Stockton, LLP
11                           1100 Peachtree Street, Suite 2800
                             Atlanta, GA 30309
12

13   COURT REPORTER:         Bonita J. Alexander, CSR, RMR, CRR
                             United States District Courthouse
14                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
15                           (503) 326-8188

16

17

18

19

20

21

22

23

24

25
```

                                                            3

```
 1                    * * * * * * * * * *

 2                   (EXCERPT OF PROCEEDINGS)

 3        THE COURT:  That's fine.

 4        The last and major issue we left with when we were

 5   last together was the expert testimony of Evan Hendricks.  I

 6   reviewed that material.  There are sort of layers of

 7   questions about it.
```

                              Page 2

Judge Mosman Hearing on Hendricks.txt

8           The first question is is this an area subject to

9      expert testimony.  I believe that it is under Kumho Tire.

10     It's certainly not the standard scientific testimony under

11     Daubert, but under Kumho Tire, I believe it's an area that

12     is subject to expert testimony.

13          The second question is is Mr. Hendricks in the

14     abstract or in general qualified as an expert in this

15     general area.  And I believe that he is.  There are things

16     that he has reviewed that aren't readily available to the

17     jury.  There's a context of congressional action, industry

18     issues and identity theft as a nationwide problem that would

19     be helpful to the jury to hear from someone who has studied

20     these issues.

21          The sources of his study are sufficient to qualify

22     him as an expert both with regard to what he has read, and

23     that includes not only his own paper that he puts out, but

24     the deposition testimony is a sufficiently precise and

25     unavailable source of expertise that it would be helpful to

                                                         4


1      the jury to hear from someone who has assimilated that sort

2      of information.

3           The more precise question, and really the question

4      raised by the defense is is his testimony in this case

5      supported by any of that sort of research and expertise on

6      particular issues that are raised.  And my answer to that is

7      that on most of them, I believe that his testimony is

8      sufficiently supported by his own expertise; that is, that

9      what he offers to this jury on the issues presented in this

10     case is sufficiently supported by his general expertise to

11     satisfy Rule 702.

                        Page 3

Judge Mosman Hearing on Hendricks.txt

12          As a general statement, what I'm allowing and the

13   reason I'm allowing it is testimony that puts the particular

14   actions of the defendant in particular here in context, in

15   the context of the nationwide problem of identity theft, in

16   the context of the congressional reaction to that and other

17   issues in the credit-reporting industry, when he can by

18   virtue of his study and his prior testimony, both in court

19   and to Congress, make comparisons, then that's something

20   that's helpful to the jury.

21          There are a couple instances where I don't believe

22   he can do that in a way that satisfies Rule 702.  First of

23   all, I'm not going to allow any testimony regarding

24   plaintiff's damages, if you will, plaintiff's response,

25   whether that response is consistent with those suffered by

                                                             5


1    other victims of identity theft.  I'm not going to allow any

2    of that.  I don't believe that comes within even his

3    broadest circle of expertise.  So I won't allow that

4    testimony.

5          There are a couple of specific facts where it

6    appears to me that, at least one in particular, I suppose,

7    where it appears to me that the entire basis of his

8    testimony appears to be information he only gets from this

9    case.  It doesn't make any comparison to any other case or

10   draw on his general expertise to render an opinion.  The one

11   that comes to mind is the last one referred to in

12   plaintiff's memorandum in opposition to defendant's motion

13   to strike, No. 9.  The label is, "Equifax values

14   instructions of credit grantors ahead of a consumer's word,"

15   which the defense has argued is not a valid subject of

16   expert testimony, made without any reasonable basis.

Page 4

Judge Mosman Hearing on Hendricks.txt

17        The response is essentially that Mr. Hendricks has
18    reviewed the depositions of the Jamaican operators.  And if
19    I contrast that, for example, with his testimony about
20    whether Equifax provides sufficient details about consumer
21    disputes, there he looks at the details provided in this
22    case and compares them with the phenomena he's observed in
23    other cases in which he's served as an expert.  He makes
24    that kind of comparison that I believe is what is at the
25    core of what qualifies him as an expert in this case.  So

                                                                    6

1     I'm not going to allow testimony like -- and in particular
2     this opinion that Equifax values instructions of credit
3     grantors ahead of consumers' word because he's simply
4     looking at evidence in this case and then rendering an
5     opinion that really doesn't have any reasonable basis
6     founded in his expertise.  The jury can hear this evidence
7     and the argument can be made, but it doesn't take an expert
8     to tell them that, so his opinion isn't particularly helpful
9     on that score.
10        So those two areas of the proposed testimony as
11    they've been broken out into parts by the parties I won't
12    allow.  The other areas I am allowing this testimony in.
13    I've reviewed the materials to qualify him as an expert, as
14    I've previously stated here.
15        We talked about doing that on paper, and obviously
16    it's within defendant's rights, I think, to require a chance
17    to have at Mr. Hendricks before he testifies in a voir dire
18    if you so choose, if you have something you want to bring up
19    that's not been raised in the papers that have been filed to
20    this day.  If all you want to do is raise the issues you've

Judge Mosman Hearing on Hendricks.txt

21   already raised in pleadings, then I'm going to allow him to

22   be qualified here now.

23          Do you have anything further you want to try to

24   challenge him on as an expert before he actually takes the

25   stand beyond what you've already put in already?

7

1          MS. MCRAE:  No, Your Honor, I don't.  I think the

2   record is preserved with what was in the papers.

3          THE COURT:  All right.

4          MS. HANSON:  Your Honor, if I may ask a question

5   with respect to the ruling.

6          THE COURT:  Yes.

7          MS. HANSON:  In reviewing plaintiff's motion,

8   opinions No. 5 and 6 in their motion, the basis for the

9   opinions that the plaintiff provided were all based upon

10   what Mr. Hendricks observed in this case.  And so I was just

11   wondering why the distinction between 5 and 6 and No. 9.

12          THE COURT:  Well, 5 and 6 are similar in that way,

13   particularly 5, similar in that way to 9, as they're listed

14   in that pleading.

15          Six hinges on something he's going to explain that

16   puts the information in context; that is, the CDV exchange

17   which, as I understand plaintiff's position -- and I'll hear

18   from them in a moment, I guess, on this -- elsewhere in this

19   pleading becomes part of this broader testimony.  That is,

20   he's not just saying that Equifax in this case doesn't

21   evaluate information.  He's getting into Equifax's method of

22   reinvestigation being the CDV exchange, which my ruling does

23   depend on my understanding that that's something he can put

24   in context with other cases having dealt with Equifax.

25   That's 6.

Judge Mosman Hearing on Hendricks.txt

8

1       No. 5 is even closer, that they fail to
2  acknowledge consumer disputes.  If the entire basis for that
3  opinion is just Mr. Kirkpatrick's testimony that he sent
4  letters in and they didn't respond, then I would strike that
5  opinion as being based solely on something the jury can
6  listen to in this case and reach their own conclusion.  It's
7  certainly my understanding from reading this that there is a
8  broader basis for that opinion, but let me hear from
9  plaintiffs on that score.
10       MR. JUSTIN BAXTER:  That is my question, Your
11  Honor.  If we can put this in context, and I suspect at
12  least -- No. 5, I know that Mr. Hendricks can testify about
13  broader context.  If we can testify this is based on his
14  general expertise and what he calls his common constellation
15  of facts, then can we elicit this testimony?
16       THE COURT:  Well, I need to know now whether in
17  fact he can testify as to this point beyond what he has
18  simply learned from Mr. Kirkpatrick; and if so, what that
19  basis is.  If you don't know, your time to tell me has come
20  and gone.
21       MR. JUSTIN BAXTER:  In preparing his testimony for
22  the stand, I can tell you, Your Honor, that yes, he will be
23  able to testify to at least one other case that's listed in
24  his expert witness statement regarding lost documents or
25  failure to acknowledge documents.

9

1       THE COURT:  Where in his expert witness statement
2  is that found?

Page 7

Judge Mosman Hearing on Hendricks.txt
3         MR. JUSTIN BAXTER:  Your Honor, I was mistaken.

4  It was in his deposition that we discussed the cases, and

5  also Mr. Hendricks is in the courtroom to answer any

6  questions the Court may have.

7         THE COURT:  This came up in his deposition that he

8  is aware of other instances where the dispute just never

9  made it out of the mail room?

10        MR. HENDRICKS:  May I approach and just answer

11 from here?

12        THE COURT:  Are you Mr. Hendricks?

13        MR. HENDRICKS:  Yes, I am.

14        THE COURT:  Come forward.  You can just stay right

15 there for a moment.

16        This is just going to be a limited question.  Do

17 you recall from your deposition whether there was discussion

18 of other instances where, as I've put it, the dispute never

19 made it past the mail room?

20        MR. HENDRICKS:  Yes.  I cited -- I believe it was

21 eight cases by name.

22        THE COURT:  And did that make it into your expert

23 report also?

24        MR. HENDRICKS:  I don't know if it made it.

25 That's the part I don't remember, I'm sorry.

                                                    10


1         THE COURT:  All right.

2         MS. HANSON:  Your Honor, I took Mr. Hendricks'

3  deposition.  He did reference seven or eight cases.  I state

4  on the record that I don't believe that's a sufficient basis

5  for his opinion, but that did come up in his deposition.  I

6  do not believe there's a specific reference to the seven or

7  eight cases, however, in his report.

                            Page 8

Judge Mosman Hearing on Hendricks.txt

8          THE COURT:  Well, I'm going to allow this
9    testimony.  As I said, 5 and 6 are close calls.  I
10   understand 6 to be based on a broader foundation than just
11   what he learned in this particular case, but involves a
12   discussion of the CDV exchange.  5, as I said earlier, was
13   the closest call.  It's, I think, bad practice not to have
14   that in the report itself, to put the other side on notice
15   of that basis for his testimony, but it did come up at a
16   deposition and is broader than just the facts of this case,
17   so I'm going to allow that.
18          Any other questions about expert testimony?
19          MS. HANSON:  Just one more question with respect
20   to Mr. Hendricks.  They had provided a lay witness statement
21   for Mr. Hendricks, and I just want to make sure whether
22   Mr. Hendricks is testifying as both a fact and as an expert
23   witness or simply as an expert witness.
24          THE COURT:  I'm only going to allow testimony as
25   an expert witness.

                                                          11


1          MS. HANSON:  Thank you, Your Honor.
2          THE COURT:  Qualifying as one precludes testimony
3    as another.
4          What testimony was contemplated as a lay witness
5    in this case?
6          MR. JUSTIN BAXTER:  Your Honor, there was some
7    discussion of the factual progression of the law and some
8    studies about the prevalence of identity theft and the act.
9          THE COURT:  That is part of why I qualify him as
10   an expert.  I don't view that as lay opinion testimony at
11   all.

                        Page 9

Judge Mosman Hearing on Hendricks.txt
12    MR. JUSTIN BAXTER:   Okay.

13                    (END OF EXCERPT.)

14              *  *  *  *  *  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

                                                    12


1

2                         --oOo--

3

4          I certify, by signing below, that the foregoing is

5    a correct transcript of the record of proceedings in the

6    above-entitled cause.   A transcript without an original

7    signature is not certified.

8

9

10

11    _____      _____
      BONITA J. ALEXANDER, CSR, RMR, CRR      DATE
12    Official Court Reporter

13

14

15

16
                          Page 10

Judge Mosman Hearing on Hendricks.txt

17
18
19
20
21
22
23
24
25

Exhibit C to Hendricks Declaration

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 0 5 2007

Stephan Harris, **Clerk**
Cheyenne

# United States District Court
## For The District of Wyoming

FEDERAL TRADE COMMISSION,                )
                                          )
            Plaintiff,                    )
                                          )
    vs.                                   )
                                          )      Civil No. 06-CV-105-D
ACCUSEARCH, INC. d/b/a Abikka.com,        )
and JAY PATEL,                            )
                                          )
            Defendants.                   )

## <u>ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESSES AND EXCLUDE EXPERT WITNESS TESTIMONY</u>

The above-entitled matter, having come before the Court on defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude Expert Witness Testimony, and the Court having carefully considered the motion, and response thereto, and being fully advised in the premises, FINDS:

1.      The case originally comes before the Court on plaintiff's action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). Plaintiff seeks injunctive and other relief regarding defendants' alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Specifically, plaintiff alleges defendants have engaged in the practice of obtaining and providing, for a fee, details of incoming and outgoing telephone calls from any phone number in the world. Plaintiff claims defendants lack the necessary authorization to retrieve such information, and have gained access to the information by engaging in fraudulent and illegal actions. Plaintiff claims defendants' unauthorized acquisition and sale of confidential consumer phone records is an unfair practice in

1

violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45. Plaintiff is seeking to permanently enjoin

defendants from violating the FTC Act, as well as seeking other equitable relief including recision

of contracts, restitution, and disgorgement of ill-gotten gains.

      2.      In the instant motion, defendants request that the Court strike plaintiff's expert

witness designations of Evan Hendricks and Cynthia Southworth. Defendants argue "Mr.

Hendricks' proposed expert testimony should be excluded and his expert witness designation

stricken because his proposed testimony does not require specialized knowledge, will not assist the

trier of fact, evades the province of the fact-finder, is not based upon facts in the record, is not a

product of reliable principles and methods, and because he is not qualified as an expert with relation

to telephone records." (Defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude

Expert Witness Testimony p. 4). Defendants argue Mr. Hendricks proposed testimony and opinions

do not require and are not based on specialized knowledge and will not assist the trier of fact.

Rather, defendants argue the trier of fact can employ common sense and their own experiences to

determine how the average consumer may or may not be affected by dissemination of their phone

records. Similarly, defendants argue "Ms. Southworth's proposed testimony should be excluded and

her expert witness designation stricken because her proposed testimony is not of specialized

knowledge, will not assist the trier of fact, evades the province of the jury, and is not based upon

facts in the record." (Defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude Expert

Witness Testimony p. 8).

2

3.      Plaintiff opposes defendants' Motion to Strike Expert Witnesses, and requests that said motion be denied.   Plaintiff states that for over twenty-five years Mr. Hendricks has investigated, studied, written article and books, spoken in seminars, and testified before Congress and the courts as an expert on personal privacy and how its loss harms individuals.  Plaintiff claims Mr. Hendricks knowledge is specialized in that it enables the trier of fact to understand the evidence by discussing and disclosing facts not necessarily obvious to the average consumer, and that his testimony will help the Court evaluate the harm or potential harm caused by the sale of confidential consumer phone records.   Plaintiff also argues its witnesses should not be limited to defendants victims, as Section 5 unfairness claims call for the Court to look beyond past harm to one person and examine the harms that befall or are likely to befall on an entire class of consumers because of a practice.   As to Ms. Southworth, plaintiff argues she is a nationally recognized expert on the use of technology, including telephone records, to locate, harass, and harm victims of domestic violence. Plaintiff claims Ms. Southworth has developed and presented training curriculum, has authored several relevant publications, worked as a consultant on relevant projects, and has been called to testify before Congress.  Plaintiff argues Ms. Southworth's expertise offers the trier of fact a glimpse into the little known world of domestic abuse and technology, and goes beyond what an average consumer might reasonably be expected to know about the potential harm caused by the sale of confidential phone records.

4.      The Court begins by noting with respect to the instant motion plaintiff's expert opinions are subject to the same standards of reliability that govern the expert opinions of strictly

3

scientific experts retained for the purposes of litigation. *See, Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)(holding that *Daubert* applies even when an expert's opinion relies on skill or experience-based observation). Under Federal Rules of Evidence Rule 702 and *Daubert*, the Court is to ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical or other *specialized* knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (*emphasis supplied*)

Rule 702 imposes upon courts the obligation to act as gatekeepers, by ensuring all expert testimony whether scientific, technical, or any other specialized knowledge, is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Courts engage in a two part analysis in determining the admissibility of an expert opinion. First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, the court must determine whether the expert's opinions are sufficiently reliable. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001): FED. R. EVID. 702 ; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

5.     The Court finds both Mr. Hendricks and Ms. Southworth are qualified to testify as experts as to the harms caused or likely to be caused by the selling of a consumer's personal phone

records, any countervailing benefits, and the appropriate steps to avoid or mitigate potential harm. Mr. Hendricks is the publisher of *Privacy Times*, has investigated, studied, written articles and books, spoken in seminars, and testified before Congress and the courts as an expert on personal privacy. Ms. Southworth is a nationally recognized expert on the use of technology, including phone records, to locate, harass, and harm victims of domestic violence. Ms. Southworth has developed and presented, on numerous occasions, a national training curriculum on the use of technology by stalkers, victims and the community, she has authored several relevant publications, acted as a consultant, and been called to testify before Congress. Mr. Hendricks and Ms. Southworth are both experienced and well qualified to testify as expert witnesses in the current litigation.

6.      In addition, Rule 702 requires that the evidence or testimony presented "assist the trier of fact to understand the evidence or to determine a fact in issue,." FED. R. EVID. 702. Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). Mr. Hendricks' and Ms. Southworth's education and experience may be beneficial to the trier of fact as a typical consumer may not posses the knowledge or background necessary to determine the potential for harm caused by the sale of confidential phone records. Mr. Hendricks has reviewed interrogatory responses and documents directly related to defendants' practices, including invoices and numerous emails between defendants and their vendors. Then, utilizing his expertise, Mr. Hendricks rendered his opinions on the harms caused by the selling of confidential consumer phone records without the consumer's knowledge or consent. Additionally, Ms. Southworth will provide the trier of fact an

5

insight into the domestic abuse problems associated with the sell of confidential phone records, reaching far beyond what the average consumer might be expected to know. As a result, the Court is of the opinion that Mr. Hendricks' and Ms. Southworth's testimony may be helpful to the trier of fact. Therefore, the Court will not strike either Mr. Hendricks or Ms. Southworth as expert witnesses in this case.

NOW, THEREFORE, IT IS ORDERED that defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude Expert Witness Testimony be, and the same hereby is, DENIED.

Dated this 7th day of February, 2007.

William C. Beaman, United States Magistrate Judge

6