KEMNITZER, ANDERSON, BARRON & OGILVIE LLP
Mark F. Anderson (SBN 44787)
445 Bush Street, Sixth Floor
San Francisco, CA 94108
Telephone: (415) 861-2265
Fax: (415) 861-3151

Attorney for Plaintiff Steven R. Yourke

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVEN R YOURKE,**<br><br>    Plaintiff,<br><br>VS.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>    **Defendant.** | Case No. 06-2370 CW<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT EXPERIAN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: May 10, 2007<br>Time: 2:00 PM<br>Location: Courtroom 2, 4th Floor |

## I. Summary

IRS and the Franchise Tax Board filed tax liens totaling against plaintiff Yourke because he was late filing his 2003 federal tax return and his 1997 and 1999 through 2002 state tax returns. Once the returns were filed, the tax authorities agreed Yourke did not owe any taxes, interest or penalties. He paid IRS nothing and he only had to pay the Franchise Tax Board collection fees, which he paid when he handed in his returns.

Experian claims its reporting on Yourke's tax liens was accurate, but it was not. Long after Yourke had shown IRS and the Franchise Tax Board that their liens were unjustified, Experian continued to report that he owed nearly $1 million in unpaid taxes (Exhibit "A" to this Memorandum). It continued to report that he had "paid" this tax liability even though he provided Experian with documents from the tax authorities showing he never owed or paid any

taxes, interest or penalties. Yourke spent six months trying to get Experian to correct his credit reports. After about a 100 telephone calls and initiating some 14 disputes with Experian, Experian modified his report to show that he paid about $200 in tax liens, which was still inaccurate (Exhibit "B" to this Memo). The truth, as Yourke proved to Experian, was that the $200 in fees he had to pay were merely collection cost fees imposed by the Franchise Tax Board pursuant to the Revenue and Taxation Code for their act of releasing their liens.

Whether the credit reports were inaccurate and whether Experian's procedures investigating the disputed reports were reasonable are genuine issues of material fact, which preclude the Court from granting summary judgment. This is the type of case in which the Ninth Circuit has said that summary judgment is rarely justified. The Court has said that "[t]he reasonableness of the procedures and whether the [credit reporting] agency followed them will be jury questions in the overwhelming majority of cases." *Guimond v Trans Union Credit Information Company*, 45 F.3d 1329, 1333 (9th Cir. 1995), and that "it would normally not be easy for a court as a matter of law to determine whether a given procedure was reasonable in reaching the very high standard set by the statute as to each individual reported upon," *Andrews v TRW, Inc.*, 225 F.3d 1063, 1068 (9th Cir, 2000) rev'd *on other grounds,* 534 U.S. 19.

**II. Statement of Facts**

With respect to tax years 1995 through 1997 and 1999 through 2002, plaintiff Steven R Yourke failed to file timely federal and state tax returns. (Yourke Tr 21, Exh T to Anderson Decl). Yourke not having done so, IRS and the Franchise Tax Board filed tax liens against Yourke with the San Francisco Recorder based on its assumptions of Yourke's taxable income. The dollar amounts of the tax liens were substantial, as much as $129,986. In fact, Yourke had no state or federal tax liability for those years (Exhibits A, B & I to Anderson Decl).

After Yourke belatedly filed his tax returns, the tax agencies checked the returns and agreed he did not owe any taxes, interest or penalties. Both agencies then released the liens.[1] Yourke paid IRS nothing; he paid the Franchise Tax Board only small collection cost recovery

---

[1] The FTBd filed the following liens and releases: For 1996 it filed a lien of $129,986 on January 28, 1999, which it released on August 9, 1999. For 1997, it filed a lien of $741,167 on June 21, 2000, which it released on October 25, 2000. For 1999 and 2000, it filed a lien of $9,916, which it released on June 13, 2005. For tax years 2001 and 2002, it filed a lien of $19,347 on September 7, 2004, which it released on September 23, 2005. IRS filed one lien of $51.655 on April 29, 2004, which it released on September 28, 2004 (Exhibit B to Anderson Decl).

fees ($114, $120 and $11), which the Franchise Tax Board is required to impose pursuant to Revenue and Taxation Code § 19254[2] (Letters from Franchise Tax Board, Exhibit B to Anderson Decl). The filed tax liens never encompassed these small collection cost fees. Yourke paid those fees on demand when he filed his state tax returns (Yourke Tr. 21, 28-29, Exhibit B to Anderson Decl; Yourke Decl ¶¶ 4-6; Exhibit I to Anderson Decl).

In October 2005, Yourke disputed the inaccuracies in his Experian credit reports. He began by calling the customer relations department explaining that his reports were inaccurate (Yourke Tr 35-39, Exh T to Anderson Decl). He followed up with a letter dated October 27, 2005, in which he explained that when he filed his tax returns the liens were released, that he owed no taxes, interest or penalties and that he had only to pay small amounts for having filed late (Exhibit B to Anderson Decl). He enclosed letters from the Franchise Tax Board proving his point. Id. Experian ignored Yourke's letter and the tax board's letters and sent out a new credit report dated December 12, 2005, with virtually no changes except to say the tax lien information was "verified."(Exhibit C to Anderson Decl).

On January 10, 2006, Yourke sent a second letter to Experian enclosing the statements mentioned above he had obtained from the tax agencies. Yourke explained in detail why the tax lien information should be deleted, i.e., he never owed any taxes. Yourke enclosed a "transcript of account for tax year 1995" he had obtained from IRS, which clearly shows he never owed any taxes, interest, penalties or collection costs." On January 31, 2006 and on February 14, 2006, Experian sent Yourke the results of its investigations, which was to continue to report the tax lien information as before.[3] [4]

In February 2006, Experian assigned special agent Carrie Higginbotham to Yourke's case. On February 14, 2006, she sent Yourke a letter which showed she had missed the whole point of Yourke's requests that the tax lien information be deleted. Ms Higginbotham first presented some boilerplate information about credit reporting agencies and the stated:

---

[2] The Franchise Tax Board is required to impose collection cost recovery fees or "lien fees" by Revenue and Taxation Code § 19254. IRS did not impose a collection cost recovery fee.
[3] Exhibit D to Anderson Decl.
[4] Exhibit E to Anderson Decl.

> Because a tax lien was rendered against you, it is part of public records and may be reflected on the credit report. Therefore, we must respectfully decline your request to remove the tax lien from your personal credit report. ….Please note that Blacks Law Dictionary defines release as *to discharge a claim one has against another*. It does not state that the debt has been released by payment of a claim.[5]

In her deposition, Ms Higginbotham said that after talking to Yourke and a Franchise Tax Board representative and looking at documents, she understood that the small amounts that Yourke had paid to the Franchise Tax Board ($114, $120 and $11) were amounts he paid once he filed his tax returns (Higginbotham Tr 27). Yet, she continued to believe the *tax liens* were "valid" and refused to make Yourke's reports accurate even though the collection fees were a consequence of the liens having been filed rather than amounts associated with taxes, interest or penalties.

On February 22, 2006, following Yourke's requests to delete the inaccurate information, Experian sent Yourke a copy of his credit report showing Experian refused to change his report with respect to the tax liens. The report still showed that Yourke paid large amounts in taxes.[6]

In February 28, March 1, March 21, and March 23, 2006, Yourke wrote additional letters to Experian disputing the tax lien information. He again enclosed proof in the form of letters from the tax authorities showing he never owed taxes, interest or penalties.[7] In his March 21 letter, Yourke explained that he had provided Experian with numerous documents prepared by IRS and the FTBd proving he never owed any taxes relating to the five tax liens in question. He again enclosed the documentation proving that point. Yourke said that Ms Higginbotham told he the documents lack "authentication." When Yourke asked her what she meant, she said refused to do so saying she would not reveal "proprietary information." Yourke asked her to contact IRS and FTBd directly and even provided the telephone numbers and prompts to verify what the agencies were saying.[8]

---

[5] Exhibit E Anderson Decl.
[6] Exhibit F to Anderson Decl.
[7] Exhibits G, H, I and J to Anderson Decl.
[8] Exhibit J to Anderson Decl; Yourke Depo Tr 51-52 (Exhibit T to Anderson Decl).

Experian employee Higginbotham told Yourke it made no difference to her whether he ever actually owed any back taxes or paid any money to have liens removed and so long as they were reported to Experian as released, they would remain on his credit reports for seven years.[9]

On April 3, 2006, Ms Higginbotham's supervisor, Ms Cristen Ransom sent a letter to Yourke stating that Ms Higginbotham had contacted the California Franchise Tax Board and verified that the tax liens were "valid" and later released and added:

> [p]lease be aware the California Franchise Tax Board and Internal Revenue Service indicate that their records reflect there were tax liens filed against you. The liens are therefore a matter of public record and may be reported on your personal credit report. Experian may report this information on your credit report pursuant to section 605(a) (5) of the FCRA.[10]

Ms Ransom viewed the Franchise Tax Board document as stating that Yourke owed the small amounts stated in the document (such as $114) as "penalties and fees associated with him not filing his taxes" and that "he was being penalized for not filing his taxes on time" (Ransom Tr 26-28, Exhibit W to Anderson Declaration). However, what was lost on Ms Ransom was that Yourke paid some fees for getting the liens released, but not penalties.

In April 2006, Experian agreed to "update" the amounts of the tax liens to reflect the actual amounts that were due to the California Franchise Tax Board and the IRS upon the filing of the tax returns. This action was an admission that its reporting on Yourke's tax liens had been inaccurate. Experian's credit report dated April 4, 2006, shows that Yourke "paid" federal and tax liens of small amounts ($0, $114, $120, $11, and $0). (Exhibit B to this Memo; Exhibit N to Anderson Decl). This report is still inaccurate; Yourke never had to pay any federal or tax liens. A reader would never know that Yourke never paid any taxes, penalties or interest his only offense being that his returns were late resulting in Yourke having to pay the collection costs required by the state Revenue and Taxation Code, which he paid on demand.

Experian has a set procedure that is unreasonable. The Experian computer system does not allow agents to enter the tax lien information as "released," the agent's only choices are to

---

[9] Exhibit I to Anderson Decl.
[10] Exhibit P to Anderson Decl.

report tax liens as paid or not paid (Higgonbotham Tr 44-47, Exhibit Q to Anderson Decl). Reporting tax liens as "paid" when the taxpayer never had to pay the liens is unreasonable.

Unlike Experian, the other two leading credit reporting agencies, Trans Union and Equifax agreed to delete the tax lien information entirely after Yourke disputed that information (Yourke Tr 67-68, Exhibit T to Anderson Decl; Yourke Declaration ¶ 8).

Experian claims that it never knew "whether Plaintiff paid all, some or any of the lien amounts" (Def's Memo, p. 2, ls 5-6) citing the declaration of Experian employee Karen Hughes. That Ms Hughes avers that the release of the lien do not indicate "whether plaintiff paid the entire amount of the liens, a portion of the liens, or no amount." (Hughes Decl, ¶ 7). Ms Hughes statement does not support what Experian says in its memorandum. It is true that the San Francisco Tax Recorder's record does not reveal this information, but that is hardly the whole story. Yourke proved he never paid a dime in taxes, penalties or interest to get the liens released. He did so with statements from the tax authorities, which were unquestionably authentic. Experian had no reason to doubt the authenticity of these statements. Therefore, Experian's statement that it never knew what plaintiff paid on the liens is not correct.

**A. Yourke's Credit Denials.** In January 2006, Yourke applied for a credit card from Citibank. Citibank turned him down. Citibank's report lists two tax liens and as a reason for the rejection, "Serious delinquency and public record or collection filed." (Exhibit U to Anderson Decl).

Also in January 2006, Wells Fargo Bank rejected Yourke's application for a personal loan. The rejection letter states the bank referred to Experian's credit report and the presence of a "tax lien." Two months later, Wells Fargo Financial rejected Yourke's application for a credit card (Yourke Tr 72, Exhibit T to Anderson Decl; Declaration of Steven Yourke, ¶¶ 2-3).

**B. Yourke's Damages.** Yourke suffered emotional distress in the process of attempting to get Experian to correct his credit reports. Yourke made innumerable telephone calls to Experian over a six month period (Yourke Tr 34, Exh T to Anderson Decl). As a result of Experian's refusal to correct his credit reports, Yourke experienced anxiety, headaches, insomnia, anger, feelings of frustration and helplessness, and feelings of rage (Yourke Tr 84, Exhibit T to Anderson Decl). This type of emotional distress is consistent with what other

persons experience when they are unable to get credit bureaus to correct their own credit reports (Hendricks Declaration, ¶ 11).

### III. Argument—Genuine Issues of Material Fact Preclude the Motion for Summary Judgment

**A. Rule 56.** Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is "not warranted if a material issue of fact exists for trial." *Ribitzki v. Canmar Reading & Bates*, 111 F.3d 658, 661-62 (9th Cir.1997). A material fact is one that "might affect the outcome of the suit under the governing law...." *Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir.1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). Further, any dispute regarding a material issue of fact must be genuine-the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Genuine Issues of Material Fact Exist**

The following genuine issues of material fact exist in this action, which precludes a grant of the motion for summary judgment:

1. Whether Experian's reports on Yourke's tax liens were accurate.
2. Whether Experian's reports on Yourke's tax liens were misleading.
3. Whether Experian followed reasonable procedures to assure maximum possible accuracy.
4. Whether Experian conducted a reasonable reinvestigation of Yourke's tax lien information.
5. Whether Experian's reinvestigation of Yourke's tax lien information was negligent.
6. Whether Experian's reinvestigation of Yourke's tax lien information was willful.

7. Whether plaintiff Yourke suffered emotional distress caused by Experian's inaccurate credit reporting.

8. Whether plaintiff Yourke suffered damages due to credit denials caused by Experian's inaccurate credit reporting.

**C. Key Statutes--Sections 1681i and 1681e(b) of the FCRA.** Section 1681i(a)(1)(A) states that if the consumer disputes the completeness or accuracy of any item contained in the consumer's file, the agency shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file []." Subsection (a) (5) adds that in such cases, the agency shall "promptly delete" any item found to be inaccurate or incomplete based on the results of its reinvestigation. Section 1681e(b) requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" whenever it prepares a consumer report.

**D. Experian Did Not Fulfill Its Duties under the FCRA**

The purpose of the Fair Credit Reporting Act was stated in *Guimond v Trans Union*, 45 F.3d 1329, 1333, (9th Cir. 1995):

> The FCRA was the product of congressional concern over abuses in the credit reporting industry. The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. These consumer oriented objectives support a liberal construction of the FCRA.

**E. Experian's Reporting on the Tax Items Was Inaccurate**

To establish a *prima facie* violation of 15 U.S.C. § 1681e(b), plaintiff must present evidence "tending to show" that a credit reporting agency prepared a consumer report containing inaccurate information. *Guimond v Trans Union Credit Information Company*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Yourke has met the required (low) threshold of a *prima facie* case. Yourke has evidence which he provided to Experian that he never owed any taxes, interest or penalties to the state or federal tax authorities. Experian's reporting of the existence of the tax liens coupled with the reporting of large dollar figures associated with the liens was inaccurate and highly misleading.

After six months of numerous telephone calls and letters, Experian changed the dollar amounts associated with the tax liens to show only the collection fees. This was only a marginal improvement over the original reports showing large dollar figures owing because the collection fees were not taxes, interest or penalties. Yet anyone reading the Experian credit report would assume that that was the case.

Experian should have corrected Yourke's credit report by deleting the tax lien information entirely, which was the action taken by Trans Union and Equifax.

While Yourke was disputing the tax lien information, Experian kept falling back on the fact that the tax liens were recorded by the tax authorities. Experian's stance was that it had a right to report this information. However, Experian was required to report accurate information, not just what appeared in the public record. A consumer report cannot be "accurate under either section 1681(e)(b) or section 1681i if it contains information that is legally incorrect." *Crane v Trans Union, LLC,* 282 F. Supp. 2d 311, 317-318, citing *Cushman v Trans Union Corp.* 115 F.3d 220, 225 (3d Cir. 1997).

**F. Experian Has No "Technical Accuracy" Defense**

Experian has no "technical accuracy" defense. The statute requires "maximum possible accuracy" and that phrase cannot be reconciled with the argument that Experian had a right to report whatever its vendor happened to find recorded in the San Francisco recorder's office (once plaintiff disputed the items and proved they were inaccurate).

When the bill that came the FCRA was first introduced, Senator Proxmire stated, "In addition to supplying inaccurate information, a second major abuse of credit reporting agencies is the dissemination of irrelevant information—that is, the information may be technically accurate but it may not serve any useful purposes." 115 Cong. Rec. 2412 (1969).

The courts agree there is no "technical accuracy" defense and misleading information is inaccurate as that term is used in the FCRA. In *Kouropoulos v. Credit Bureau, Inc.,* 734 F.2d 37 (D.C. Cir.1984), the Court held that a credit reporting agency may be liable for damages even if the credit report contains statements that are technically true. The court said that

> Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure 'maximum accuracy". The Act's self-stated purpose is 'to require that consumer reporting

agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ⋯ in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'
Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.

The court continued in this vein:

The purpose of the FCRA, as further elaborated in its legislative history, is "to protect consumers from being unjustly damaged because of inaccurate *or arbitrary* information in a credit report." S.Rep. No. 517, 91st Cong., 1st Sess. 1 (1969) (emphasis supplied). And, in introducing the fair credit reporting bill, Senator Proxmire said: "[p]erhaps the most serious problem in the credit reporting industry is the problem of inaccurate *or misleading* information." 115 Cong.Rec. 2411 (1969) (emphasis supplied). We think it clear that Congress meant the Act to address more than technically inaccurate reports.

Similarly, in *Alexander v Moore & Associates, Inc.*, 553 F. Supp. 948 (D. Hawaii 1082), the district court noted that

One of the purposes of the Act, as stated in the Congressional statement of purpose, is "to insure that consumer reporting agencies exercise their grave responsibilities with *fairness,* impartiality, and a respect to the consumer's right to privacy, and to require that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information *in a manner which is fair and equitable to the consumer,"* emphasis supplied."

In *Soghomonian v United States,* 278 F. Supp.2d 1151 (E.D. Calif 2003), the defendant credit reporting agency Trans Union had reported the existence of released tax liens. In denying Trans Union's motion for summary judgment, the court stated that

to the extent that Trans Union's argument is that it should not be held liable for the continuing appearance of the tax liens after Plaintiffs submitted a notice of dispute because Hogan [Trans Union's vendor] was unfamiliar with CNAs [certificates of non-attachment of tax liens] this argument is contrary to clearly established law. In order for this argument to prevail, Trans Union would have to establish that its reliance on Hogan was itself reasonable; if it was not reasonable, then Trans Union cannot be said to have used reasonable procedures to assure the accuracy of the information it continued to disseminate even after receiving notice of Plaintiffs' dispute. However, the case law is clear that a credit reporting agency does *not* act reasonably under the FCRA by deferring entirely to another source of information. The "grave responsibility" imposed by the FCRA's reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997) (quotations and brackets omitted). This is be especially true

where, as here, the source which the reporting agency relies upon *does not* consider information supplied by the consumers in the course of "verifying" the disputed information. Moreover, as the Ninth Circuit has stated, the reasonableness of a credit reporting agency's procedures under the FCRA and whether the agency actually followed these procedures "will be jury questions in the overwhelming majority of cases." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995) (citation omitted). In this case, Plaintiffs not only submitted a statement of dispute with respect to the tax lien information, but *they also provided proof to Trans Union that the tax liens had been extinguished.* This proof came from the IRS itself in the form of the CNAs that Plaintiffs provided to Trans Union directly. Plaintiffs' act of providing copies of the CNAs to Trans Union went well beyond what was required of them under the FCRA; all that was required of them was that they notify Trans Union that they disputed the contents of their credit report, and Trans Union was required to perform a free reinvestigation of the disputed items and "record the current status of the disputed information, or delete the item[s] from the file," within 30 days of the date of Plaintiffs' dispute. 15 U.S.C. § 1681i(a)(1)(A). By providing Trans Union evidence that the tax debt was not valid at the same time they submitted their statement of dispute, Plaintiffs did all they could to ensure that Trans Union would comply with its duties under the FCRA. Yet Trans Union did not comply; it continued to report the tax liens as valid, even though they were not. In this case, a reasonable jury could well conclude that the measures taken by Trans Union were not sufficiently "reasonable" under the circumstances to excuse Trans Union from liability for failure to adequately respond to Plaintiffs' statement of dispute.

In the above-cited case, the jury awarded plaintiff $964,000 and attorney's fees eventually came to $393,000. *Soghomonian v United States,* 2005 WL 1972594 (E.D. Calif).

### G. Experian Did Not Use Reasonable Procedures to Investigate the Tax Lien Information

Experian will argue that even if the tax lien information in Yourke's credit reports was inaccurate, it escapes liability "if it can show that the inaccurate report was generated despite the agency following reasonable procedures. *Guimond v. Trans Union,* 45 F.3d at 1333. This statement suggests that Experian bears the burden of proof on whether its procedures were reasonable. In its moving papers, Experian has failed to provide the Court with any evidence as to the reasonableness of its procedures. Accordingly, if the Court agrees there is a material issue of fact as to the accuracy of plaintiff's credit reports, Experian's motion should be denied.

The courts have set some guidelines in assessing the issue of reasonableness of an agency's procedures in the context of summary judgment motions. The Ninth Circuit has stated that, "An inquiry into the reasonableness of the procedures and whether the agency followed

them will be jury questions in the overwhelming majority of cases." *Guimond,* 45 F.3d at 1332 citing *Cahlin v General Motors Acceptance Corp.* 936 F.2d 1151, 1156 (11th Cir. 1991). The Ninth Circuit has also stated that "[I]t would normally not be easy for a court as a matter of law to determine whether a given procedure was reasonable in reaching the very high standard set by the statute as to each individual reported upon." *Andrews v TRW, Inc.,* 225 F.3d 1063, 1068 (9th Cir, 2000), *rev'd on other grounds,* 534 U.S. 19. Finally, summary judgment is only appropriate if the reasonableness of the agency's procedures is "beyond question." *Crabill v Trans Union, LLC,* 259 F.3d 662, 664 (7th Cir. 2001). In this case, there are serious questions concerning the reasonableness of Experian's procedures.

Experian refused to delete the tax lien information. Its position was that since the tax authorities had filed liens, it had a right to continue to report that information even after being provided proof that Yourke never owed any taxes, interest, or penalties. Experian reported the collection fees as if the liens were to collect those fees, which was not correct. Yourke paid the fees when presented with them by the Franchise Tax Board when he (belatedly) filed his tax returns. Experian's procedures were, on the one hand, to ignore the proof supplied by Yourke as to the facts concerning the tax liens, and on the other, to simply report what the tax authorities had recorded with the San Francisco Recorder's office with some modifications. The only logical and right procedure would have been to delete the tax lien information altogether given the facts.

**H. Plaintiff Has a Right to Seek Damages for Emotional Distress and Has Provided Evidence of Such Damages.**

Contrary to Experian's contention, in the 9th Circuit, damages recoverable under the FCRA "include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses" due to a denial of credit. *Guimond v Trans Union Credit Information Company,* 45 F.3d 1329, 1333 (9th Cir. 1995). (In its memorandum, defendant Experian fails to cite, let alone distinguish *Guimond).*

Plaintiff Yourke has provided evidence that he suffered emotional distress as a result of Experian's conduct. He has testified he suffered anxiety, headaches, insomnia, anger, and feelings of frustration, helplessness, and rage (Yourke Tr 84, Exhibit T to Anderson Decl). This

description of his reaction to Experian's intransigence is consistent with that of others who have had difficulties getting their credit reports corrected (Hendricks Declaration, ¶ 11).

The time Yourke personally spent trying to get Experian to correct his credit reports added to his frustration. He called Experian about 100 times in a six month period, usually reaching on voice mail. It was very difficult to get through to a live person. Supervisor Ransom refused to return his calls. (Yourke Declaration ¶ 9).

Contrary to Experian's argument, plaintiff need not have consulted a mental health worker during this process in order to obtain damages for emotional distress. Such damages may be awarded established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms. *Cf. Johnson v Hale*, 13 F.3d 1351 (9th Cir. 1994).

The loss of credit opportunities also constitutes compensable harm under the FCRA. *Lawrence v Trans Union LLC*, 296 F. Supp.2d 582 (E.D. Pa. 2003). Contrary to Experian's argument, the documents subpoenaed from Citibank and Wells Fargo Bank are in admissible form. The documents indicated that the tax lien information were factors in Yourke being denied credit (Exhibit U to Anderson Decl (Citibank Custodian of Records Affidavit included); Declaration of Steven Yourke, Exhibits A & B).

### I. Experian's Conduct Was "Willful" so Plaintiff's Claim for Punitive Damages Should be Considered by the Jury

Yourke provided Experian all the facts concerning the tax liens. Any reasonable credit reporting agency would have deleted the tax lien information given the facts. Experian knowingly and willfully refused to delete the information. On this record, Experian is not entitled to summary judgment of plaintiff's claim that it willfully disregarded its obligations under the FCRA.

Experian as a credit reporting agency should be held to a high standard in terms of compliance with the Fair Credit Reporting Act especially considering the Experian law department was involved in handling Yourke's dispute (Hughes Tr 39, Exh S to Anderson Decl).

When someone violates the FCRA with the advice of counsel, the trier of fact may draw an inference that the violation was willful. *Phillips v Grendahl,* 312 F.2d 357, 371 (8th Cir. 2002).

In *Reynolds v Hartford Financial Services Group, Inc.,* 435 F.3d 1081 (9th Cir. 2006), *cert granted sub nom, Geico Insurance Co v Edo,* 127 S. Ct. 36, the 9th Circuit defined "willful" actions as those done with "knowledge or reckless disregard with respect to whether an action is unlawful." There is a material issue of fact for the jury as to whether Experian's conduct was willful. Experian knew the true facts concerning the tax liens, but chose to ignore them. This conduct qualifies as "willful."

### IV. Conclusion

For the reasons stated, plaintiff respectfully asks that Experian's motion for summary judgment be denied.

Dated: April 12, 2007.

        KEMNITZER, ANDERSON, BARRON & OGILVIE LLP


        By ___/s/Mark F Anderson___
            Mark F Anderson
            Attorney for Plaintiff

# TABLE OF CONTENTS

I. Summary ................................................................................................................... 1

II. Statement of Facts..................................................................................................... 2
   A. Yourke's Credit Denials ...................................................................................... 6
   B. Yourke's Damages.............................................................................................. 6

III. Argument—Genuine Issues of Material Fact Preclude the Motion for Summary Judgment .................................................................................................................... 7

   A.  Rule 56............................................................................................................. 7
   B.  Genuine Issues of Material Fact Exist.............................................................. 7
   C.  Key Statutes--Sections 1681i and 1681e(b) of the FCRA ................................ 8
   D.  Experian Did Not Fulfill Its Duties under the FCRA ....................................... 8
   E.  Experian's Reporting on the Tax Items Was Inaccurate .................................. 8
   F.  Experian Has No "Technical Accuracy" Defense............................................. 9
   G.  Experian Did Not Use Reasonable Procedures to Investigate the Tax Lien Information................................................................................................... 11
   H.  Plaintiff Has a Right to Seek Damages for Emotional Distress and Has Provided Evidence of Such Damages............................................................. 12
   I.  Experian's Conduct Was "Willful" so Plaintiff's Claim for Punitive Damages Should be Considered by the Jury .................................................................. 13

IV.  Conclusion............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Alexander v Moore & Associates, Inc.*, 553 F. Supp. 948 (D. Hawaii) .......... 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) .......... 7

*Andrews v TRW, Inc.*, 225 F.3d 1063, 1068 (9th Cir, 2000) .......... 2

*Cahlin v General Motors Acceptance Corp.* 936 F.2d 1151, 1156 (11th Cir. 1991) .......... 12

*Crane v Trans Union, LLC*, 282 F. Supp. 2d 311 .......... 9

*Cushman v Trans Union Corp.* 115 F.3d 220, 225 (3d Cir. 1997) .......... 9

*Guimond v Trans Union Credit Information Company*, 45 F.3d 1329, 1333 (9th Cir. 1995) .......... 2, 8, 12

*Guimond v Trans Union*, 45 F.3d 1329, 1333, (9th Cir. 1995) .......... 8

*Johnson v Hale*, 13 F.3d 1351 (9th Cir. 1994) .......... 13

*Kouropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir.1984) .......... 9

*Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir.1991) .......... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .......... 7

*Reynolds v Hartford Financial Services Group, Inc.*, 435 F.3d 1081 (9th Cir. 2006), *cert granted*, 127 S. Ct. 36 .......... 13

*Ribitzki v. Canmar Reading & Bates*, 111 F.3d 658, 661-62 (9th Cir.1997) .......... 7

*Soghomonian v United States*, 2005 WL 1972594 (E.D. Calif) .......... 11

*Soghomonian v United States*, 278 F. Supp.2d 1151 (E.D. Calif 2003) .......... 10

**Statutes**

Revenue and Taxation Code § 19254 .......... 3

**Other Authorities**

115 Cong. Rec. 2412 (1969) .......... 9

**Rules**

Fed.R.Civ.P. 56(c) .......... 7

# experian

**Report date**
November 12, 2005
www.experian.com/disputes
Call 800 509 8495

**Prepared for**
STEVEN R YOURKE
**Report number**
0515123094

EXP/YOURKE 00169

## Information affecting your creditworthiness

Items listed with dashes before and after the number, for example –1–, may have a potentially negative effect on your future credit extension and are listed first on the report.

Credit grantors may carefully review the items listed below when they check your credit history. Please note that the account information connected with some public records, such as bankruptcy, also may appear with your credit accounts listed later in this report.

## Public records

| Source/<br>Identification number | Location<br>number | Date filed/<br>Date resolved | Responsibility | Claim amount/<br>Liability amount | Status details |
|---|---|---|---|---|---|
| –1– **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | SQ2004H708905 | 4-2004/<br>9-2004 | Individual | $51,655 /<br>NA | Status: Federal tax lien paid.<br>This item was verified on Nov 2005 and remained unchanged. |
| –2– **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | BKH310PG0664SQ9 | 1-1999/<br>8-1999 | Individual | $129,986 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Nov 2005. |
| –3– **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | SQ2000H6630519 | 6-2000/<br>10-2000 | Individual | $741,167 /<br>NA | Status: State tax lien paid.<br>This item was verified on Nov 2005 and remained unchanged. |
| –4– **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | BKI315PG0583SQ2 | 1-2003/<br>6-2005 | Individual | $9,916 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Nov 2005. |
| –5– **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | BKI717PG0516SQ2 | 9-2004/<br>9-2005 | Individual | $19,374 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Nov 2005. |

Exhibit A to Pl's Memo in
Opp to Summ Jmt
*Yourke v Experian*

0166638097

## experian

**Prepared for**
STEVEN R YOURKE
**Report number**
1601863593

**Report date**
April 04, 2006
www.experian.com/disputes
Call 800 509 8495

Page 2 of 10

### Information affecting your creditworthiness

Items listed with dashes before and after the number, *for example --1--*, may have a potentially negative effect on your future credit extension and are listed first on the report.

Credit grantors may carefully review the items listed below when they check your credit history. Please note that the account information connected with some public records, such as bankruptcy, also may appear with your credit accounts listed later in this report.

### Public records

| Source/<br>Identification number | Location<br>number | Date filed/<br>Date resolved | Responsibility | Claim amount/<br>Liability amount | Status details |
|---|---|---|---|---|---|
| --1-- **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | SQ2004H708905 | 4-2004/<br>9-2004 | Individual | $0 /<br>NA | Status: Federal tax lien paid.<br>This item was verified and updated on Apr 2006. |
| --2-- **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | BKH310PG0664SQ9 | 1-1999/<br>8-1999 | Individual | $114 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Mar 2006. |
| --3-- **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | SQ2000H6630519 | 6-2000/<br>10-2000 | Individual | $120 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Mar 2006. |
| --4-- **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | BKI315PG0583SQ2 | 1-2003/<br>6-2005 | Individual | $11 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Mar 2006. |
| --5-- **SAN FRANCISCO CNTY REC**<br>400 S VAN NESS AVE<br>SAN FRANCISCO CA 94103 | BKI717PG0516SQ2 | 9-2004/<br>9-2005 | Individual | $0 /<br>NA | Status: State tax lien paid.<br>This item was verified and updated on Mar 2006. |

Exhibit B to Pl's Memo in
Opp to Summ Jmt
*Yourke v Experian*