IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. YOURKE, | No. C 06-2370 CW |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | |

Defendant Experian Information Solutions, Inc. moves for summary judgment on Plaintiff Steven Yourke's claims of negligent and willful non-compliance with the Fair Credit Reporting Act (FCRA). Plaintiff opposes the motion. The matter was heard on May 10, 2007. Having considered all of the papers filed by the parties, the evidence cited therein and oral argument, the Court denies Defendant's motion.

## BACKGROUND

This dispute arises out of a series of tax liens filed against Yourke based on his failure to file federal and state tax returns for tax years 1995 through 1997 and 1999 through 2002. The liens

ranged from $9,916 to $741,167, based on estimates by the Internal Revenue Service and Franchise Tax Board of the amount of tax potentially due. Yourke states that he did not file tax returns in those years because he had no tax liability. After the liens were filed, Yourke filed his tax returns for the years in question. The IRS and FTB agreed that he did not owe taxes and released all of the liens by September, 2005.[1] The FTB charged Yourke collection cost recovery fees of $114, $120 and $11, pursuant to California Revenue and Taxation Code § 19254.

These liens began appearing on Yourke's credit report sometime prior to October, 2005, when he first called Experian regarding the reporting of the liens on the report. At that time all five tax liens were reported by Experian. Although all five liens had been recorded as released, Experian reported only two of them as having been released.[2] All of the liens were listed at the high amounts for which they had originally been filed. Yourke informed the customer relations department that his reports were inaccurate. Yourke followed up with Experian in writing on October 27, 2005; he

---

[1] The FTB filed four tax liens: a $129,986 lien in January, 1999 for the 1996 tax year, which was recorded as released in August, 1999, a $741,167 lien in June, 2000 for the 1997 tax year, which was recorded as released in October 2000, a $9,916 lien in January, 2003 for the 1999 and 2000 tax years, which was recorded as released in June, 2005, and a $19,374 lien in September, 2004 for the 2001 and 2002 tax years, which was recorded as released in September, 2005. The IRS filed one $51,655 lien in April, 2004, which was recorded as released in September, 2004.

[2] The consumer versions of Yourke's report which he presents as evidence state that the liens are "paid" rather than "released." Defendant presents evidence that the liens are reported as "released" in all reports provided to creditors. The consumer version of the report is only provided to Yourke and would not be used to deny him credit. Thus it is irrelevant.

2

sent letters from the FTB, indicating that no tax was due for each of the years in question, that Yourke had paid the total amounts due including penalties and interest and that the FTB had filed a release of lien for each lien recorded. He further requested that all references to the liens be expunged from his credit report because he "never owed any taxes and never failed to pay that [which he] owed." Anderson Declaration, Exhibit B.

Pursuant to 15 U.S.C. § 1681i, Experian reinvestigated the liens after receiving Yourke's complaint. Experian states that its public records vendor confirmed that the five liens had been filed but that each had been released. Experian updated Yourke's report to indicate that each of the liens was released and sent him a copy of the new version with a correction summary on December 12, 2005. The liens were still listed with the high amounts for which they had been filed.

Yourke wrote another letter to Experian on January 10, 2006. He again explained that he had not in fact owed any taxes and that any amounts paid in order for the liens to be released were fees. He stated that the liens were "now correctly reported as 'paid'" but argued that they should be expunged from his report because "they have no relevance to the issue of [his] creditworthiness." Anderson Declaration, Exhibit D. He again attached the letters from the FTB. Yourke also attached an IRS document, which showed that the lien had been filed but that he had been credited back for the amounts the IRS had believed he owed and the lien had been released.

On January 26, January 31 and February 14, 2006, Experian

3

1 sent Yourke additional copies of his credit report, indicating that
2 the information regarding the released liens had been verified in
3 November, 2005. The liens were all listed at the high amounts for
4 which they had originally been filed. Experian customer affairs
5 specialist Carrie Higginbotham also sent a letter on February 14,
6 2006, stating that a tax lien "is part of public records and may be
7 reflected on the credit report." Anderson Declaration, Exhibit E.
8 Further, the letter noted that "Blacks Law Dictionary defines
9 release as <u>to discharge a claim one has against another</u>. It does
10 not state that the debt has been released by payment of a claim."
11 <u>Id.</u> (emphasis in original).

12 After continuing complaints by Yourke, Experian updated the
13 credit report in March, 2006 to indicate the small amounts actually
14 paid by Yourke as the claim amount for the FTB liens. In April,
15 2006, Experian updated the credit report to indicate $0 for the
16 amount of the federal lien. Yourke states that Trans Union and
17 Equifax, the other two major credit reporting agencies, agreed to
18 delete the tax lien information entirely from his report.

19 Yourke states that in January, 2006, Citibank denied his
20 application for a credit card and Wells Fargo denied his
21 application for a personal loan. Yourke also alleges that he
22 suffered emotional distress.

23 On April 4, 2006, Yourke filed his complaint stating claims
24 for negligent and willful non-compliance with the FCRA. Yourke
25 alleges that Experian failed to comply with 15 U.S.C. § 1681e(b),
26 which requires Experian to "use reasonable procedures to assure
27 maximum possible accuracy of the information concerning the

28 4

individual about whom the report relates," and 15 U.S.C. § 1681i(a)(5)(A), which states that when "information is found to be inaccurate or incomplete or cannot be verified," Experian must "promptly delete that item of information from the consumer's file or modify that item of information as appropriate, based on the results of the reinvestigation."

Experian now moves for summary judgment on both claims, arguing that the inclusion of the liens, and the amounts for which they were filed, on Yourke's report was not incorrect and therefore triggered no duty to make any changes. Further, Experian argues that even if Yourke were able to demonstrate a triable issue of fact regarding its compliance with FCRA, Yourke has not provided any admissible evidence of damages stemming from its actions.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.

5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to

produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

                                DISCUSSION

I. Violations of the FCRA

The FCRA creates a private right of action against credit reporting agencies for negligent or willful non-compliance with its duties. 15 U.S.C. §§ 1681n, 1681o. Both of Yourke's claims require a prima facie showing of inaccurate information to proceed. See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1334 (9th Cir. 1995).

Experian argues that Yourke cannot demonstrate that there was any inaccuracy in his report. Experian cites Cahlin v. General Motors Acceptance Corporation, 936 F.2d 1151 (11th Cir. 1991), for the proposition that an item on a credit report, even if potentially misleading, does not give rise to a private right of

7

action if it is not technically incorrect.  Experian argues that Yourke's request is similar to that in Cahlin, where the plaintiff sought to have all references to a prior loan dispute removed from his credit report.  There, the plaintiff had terminated an auto lease agreement, believing that he could do so within ninety days without penalty or financial obligation.  The lessor sent two notices to the plaintiff, indicating that he owed $3,842.44 and threatening legal action.  The plaintiff later settled with the lessor's collection attorney by paying $2,000 as full satisfaction for the indebtedness.  Between the time the plaintiff returned the car and the time he settled with the lessor, the lessor reported the account as delinquent and later as charged off as an active receivable.  Therefore, the credit reporting agency listed an "I9" rating, indicating a charged off account, with a balance due of $3,843.44.

After the plaintiff satisfied the terms of the settlement, the lessor informed the credit reporting agency that the loss had been paid in full and stated, "We would appreciate your marking your file accordingly."  Id. at 1155.  In response, the credit reporting agency kept the I9 rating, but changed the account balance to $0.  Both the plaintiff and the lessor, at the plaintiff's request, continued to complain to the credit reporting agency, seeking deletion of I9 rating.  The credit reporting agency first changed the rating on the account to an I1 rating, indicating that the account was paid within thirty days of billing but kept the I9 rating in the plaintiff's credit history.  Eventually, based on instructions from the lessor, the agency removed all negative

information about the lease account from the plaintiff's account history.

The Eleventh Circuit held that the inclusion of the negative history "was more accurate than the negative-free report that [the plaintiff] contends he should have received." Id. at 1159 n.19. In this case, it is undisputed that the liens were valid when filed. As in Cahlin, reporting the liens as released, with the small amounts that Yourke paid to have them released, is more accurate than omitting any information regarding the liens. However, triable issues of fact remain concerning the accuracy of Yourke's report when he first requested it in October, 2005 for purposes of § 1681e(b), and the reasonableness of Experian's response to his complaints about the report for purposes of § 1681i(a).

As recognized by the Eleventh Circuit in Cahlin, some courts have held that "factually correct information that could also be interpreted as being misleading or incomplete" is enough to sustain a claim under the FCRA. Id. (citing Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C. Cir. 1984); Alexander v. Moore & Assocs., Inc., 553 F. Supp. 948, 952 (D. Haw. 1982); see also, Andrews v. Trans Union Corp., 7 F. Supp. 2d 1056, 1074 (C.D. Cal. 1998)("Section 1681e(b) targets not only strictly inaccurate information, but also information that is technically accurate but nevertheless misleading."), rev'd in part on other grounds in Andrews v. TRW Inc., 225 F.3d 1063 (9th Cir. 2000). The Cahlin court also noted that other courts allow the reporting of "factually correct information about a consumer that might

9

nonetheless be misleading or incomplete in some respect." Cahlin, 936 F.2d at 1157 (citing McPhee v. Chilton Corp., 468 F. Supp. 494 (D. Conn. 1978); Todd v. Associated Credit Bureau Servs., Inc., 451 F. Supp. 447 (E.D. Pa. 1977), aff'd mem., 578 F.2d 1376 (3d. Cir. 1978), cert. denied, 439 U.S. 1068 (1979)).

In Koropoulos, the D.C. Circuit followed the reasoning of Alexander, holding that § 1681e(b) applies "to consumer reports even though they may be technically accurate, if it is shown that such reports are not accurate to the maximum possible extent." 734 F.2d at 42 (quoting Alexander, 553 F. Supp. at 952). However, because the statute requires only maximum possible accuracy, the court held that a balancing test should be used to determine whether a reporting agency has violated § 1681e(b). Id. Under this test, the court should

> weigh the potential that the information will create a misleading impression against the availability of more accurate or complete information and the burden of providing such information. Clearly the more misleading the information [i.e., the greater the harm it can cause the consumer] and the more easily available the clarifying information, the greater the burden upon the consumer reporting agency to provide this clarification. Conversely, if the misleading information is of relatively insignificant value, a consumer reporting agency should not be required to take on a burdensome task in order to discover or provide additional or clarifying data, and it should not be penalized under this section if the procedures used are otherwise reasonable.

Id. (quoting Alexander, 553 F. Supp. at 952) (alterations in original).

Other courts have similarly held that technical accuracy is not sufficient to satisfy § 1681e(b). See, e.g., Dalton v. Capital Associated Indus., 257 F.3d 409, 415 (4th Cir. 2001) ("A report is

10

inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect.) (quoting Sepulvado v. CSC Credit Servs., 158 F.3d 890, 895 (5th Cir. 1998)) (alterations in original). The legislative history, which indicates that the FCRA was enacted "to protect consumers from being unjustly damaged because of inaccurate or arbitrary information," supports this broader interpretation of § 1681e. S. Rep. No. 91-517, at 1 (1969) (emphasis added); see also 115 Cong. Rec. 2411 (1969) (statement of Sen. Proxmire) ("perhaps the most serious problem in the credit reporting industry is the problem of accurate or misleading information." (emphasis added)).

The Court finds that Experian's original reporting in October, 2005 of only two of the liens as released when all five had been recorded as released creates a triable issue of fact with respect to whether it violated § 1681e(b). Further, after Yourke demonstrated that the liens had all been released with the payment of little or no money, Experian's continued inclusion of the liens as released but with the full amount for which they were originally filed could be viewed as misleading. A creditor who saw a tax lien filed for a large amount and released could reasonably believe that Yourke had in fact failed to pay that amount in taxes. Experian argues that its decision to change the report on the liens to state only the amount Yourke actually paid to have them released undermines Yourke's claims. However, Experian's failure to change the amount of the liens until five months after Yourke first complained, and only under continued pressure from Yourke, creates

11

a triable issue of fact regarding the reasonableness of Defendant's reinvestigation process under § 1681i(a).

## II. Damages

In the alternative, Defendant argues that Yourke's claims fail as a matter of law because he has not produced evidence that any denial of credit was due to the inclusion of the tax liens on his credit report. However, the Ninth Circuit has held that evidence of "a failure to comply with § 1681e(b) is actionable even absent a denial of credit" and noted that "'actual damages' has been interpreted to include recovery for emotional distress and humiliation." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). At his deposition, Yourke testified that he experienced "anxiety, headaches, insomnia, anger, feelings of frustration, and helplessness, feelings of rage," which he attributed to the amount of effort he put into getting Experian to change his report combined with the feeling that he was being ignored. Anderson Declaration, Exhibit T at 84-85.

Therefore, the Court denies Defendant's motion for summary judgment on this ground.

## III. Punitive Damages

Finally Defendant argues that Yourke's claim for punitive damages must fail because he cannot demonstrate that it willfully violated the FCRA. However, Defendant's argument is based on its assertion that it did not violate the FCRA. Therefore, the Court denies Defendant's motion to dismiss on this ground.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion

12

for summary judgment (Docket No. 34).[3]  As discussed at the hearing, the parties shall continue to try to settle this matter using the same mediator they have already used.  If that is not possible, they shall request that the Court refer the case to a magistrate judge for a settlement conference.  A pretrial conference will be held on August 7, 2007 at 2:00 PM.  A four day jury trial is scheduled to begin on August 20, 2007 at 8:30 AM.

IT IS SO ORDERED.

Dated: 6/20/07

CLAUDIA WILKEN
United States District Judge

---

[3] Defendant's motion in limine to exclude the testimony of Plaintiff's expert witness Evan Hendricks (Docket No. 35) is GRANTED for purposes of this motion.  The motion to exclude Hendricks' testimony at trial is denied without prejudice to raising as a motion in limine at the pretrial conference.

13